## WAIT v. CITY OF STURGIS.

1. MUNICIPAL CORPORATIONS—REDEVELOPMENT OF DOWNTOWN AREA—
SPECIAL ASSESSMENT—NOTICE.

   Special assessment of property for redevelopment of downtown
   business area of defendant city *held*, not invalid, where there
   was substantial compliance with mandates of the city charter
   and parties challenging the proceedings had received actual
   notice of pendency of the proceedings (PA 1962, No 162, § 5;
   Sturgis Charter, chap 19, §§ 1–10).

2. SAME—REDEVELOPMENT OF DOWNTOWN AREA—SPECIAL ASSESS-
MENT—CITY-OWNED PROPERTY.

   Special assessment of property for redevelopment of downtown
   business area in defendant city *held*, not to have been shown
   invalid for failure of city to make an estimated assessment on
   city-owned property, where city assumed $59,000 of estimated
   cost of $344,000 of the project (Sturgis Charter, chap 19,
   §§ 1–10).

3. SAME—REDEVELOPMENT OF DOWNTOWN AREA—SPECIAL ASSESS-
MENT—PRESUMPTION OF VALIDITY.

   The presumption of validity attaches to the action of a city
   commission with respect to what property should be included
   in establishing a special assessment district for redevelopment
   of a downtown business area (PA 1962, No 162, § 5; Sturgis
   Charter, chap 19, §§ 1–10).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 38 Am Jur, Municipal Corporations §§ 381, 385, 389.
[4] 5 Am Jur 2d, Appeal and Error § 822.
[5] 38 Am Jur, Municipal Corporations §§ 385, 389.
[6] 20 Am Jur, Evidence §§ 403, 405.
[7] 5 Am Jur 2d, Appeal and Error § 1009.

4. APPEAL AND ERROR—CHANCERY CASES—FINDINGS OF TRIAL COURT
—RECORD.

   The Court of Appeals will not ordinarily disturb the findings of
   the trial judge in an equity case unless, after an examination
   of the entire record, it reaches the conclusion that it would
   have arrived at a different result had it been in the position
   of the trial court.

5. MUNICIPAL CORPORATIONS—REDEVELOPMENT OF DOWNTOWN AREA—
FINDING.

   Finding of trial judge in action to invalidate special assessment
   for redevelopment of downtown business area that city commis-
   sion had not abused its discretion in establishing the limits
   of the district is not disturbed on review by Court of Appeals
   (PA 1962, No 162, § 5; Sturgis Charter, chap 19, §§ 1–10).

6. EVIDENCE—INTERROGATORIES.

   Interrogatories and answers thereto of city clerk were properly
   excluded as evidence, not used for cross-examination but to
   show what was in them, where the clerk was a witness in court
   and did testify.

7. COSTS—PUBLIC QUESTION—SPECIAL ASSESSMENT DISTRICT.

   No costs are allowed in action to enjoin proceeding with a special
   assessment district for redevelopment of downtown business
   area and to declare rights relative to validity of the district,
   a public question being involved.

Appeal from St. Joseph; Andrews (Mark S.), J.
Submitted Division 3 November 4, 1965, at Grand
Rapids.   (Docket Nos. 594, 595.)   Decided April
12, 1966.   Leave to appeal denied by Supreme Court
June 21, 1966.   See 378 Mich 720.

Complaint by J. Paul Wait and Eathel Cole Wait
against the City of Sturgis, a municipal corpora-
tion, to enjoin proceeding with a special assessment
district and to declare rights relative to the validity
of the special assessment district.   Similar action
by the Sturgis Foreign Veterans Club, a nonprofit
corporation.   Judgment for defendant.   Plaintiffs
appeal.   Affirmed.

*J. Paul Wait, in propria persona.*

*Roy H. Hagerman,* for plaintiff Sturgis Foreign Veterans Club.

*Dresser & Dresser (Raymond H. Dresser, Jr.,* of counsel) and *Dickinson, Wright, McKean & Cudlip (Charles R. Moon* and *George E. McKean,* of counsel), for defendant.

Burns, J. These actions are brought to challenge the validity of proceedings taken by the city of Sturgis determining a public improvement and levying special assessments to defray part of the cost thereof.

The Sturgis city commission, acting under authority of PA 1961, No 120, § 1 (CLS 1961, § 125.981 [Stat Ann 1965 Cum Supp § 5.3533(1)]) on May 8, 1963, adopted a resolution regarding the redevelopment of the downtown business area. Due to the development of the outlying shopping areas many store buildings in the downtown area were vacant, and in the resolution it was stated that the city of Sturgis desired to improve the principal downtown shopping area and that it was necessary for off-street parking lots to be developed. The complex consisted of 7 parking lots, to be known as the "Sturgis Center Parking System." It was determined that the parking system was a necessary public improvement which benefited the city as a whole, and conferred a special benefit to property included within the "Sturgis *Center Improvement* Project." The resolution further provided that the improvement should be financed by a special assessment district, and that the city would contribute $59,000 toward the cost thereof, by reason of city-owned land being included within the "Sturgis Cen-

ter Parking System," and the entire city would be benefited. The resolution was unanimously adopted.

Under date of May 20, 1963, the city engineer prepared estimates of expense in the amount of $343,763. The city assessor prepared a memorandum indicating that the assessment would affect four parcels of public property: the library, city offices, fire station, and land referred to as the Spence property, for a total of $17,500.

At a regular meeting of the city commission on May 22, 1963, the general plans of the work, the estimate of the cost, together with the plan of the area to be improved, were adopted by resolution. In this resolution the proposed parking complex was referred to as "Sturgis *Improvement Center* Project" consisting of the establishment and operation of automobile parking facilities to be known as "Sturgis Center Parking System" and contained a determination to make the proposed improvement at the estimated cost of $344,000; $59,000 of which would be paid from city funds, and the balance financed from special assessments against the property benefited, and described the special assessment district by metes and bounds. The resolution also fixed a date to hear objections.

A notice was prepared, reciting among other things that the city commission would hear objections on June 12, 1963, to the proposed public improvement known as "Sturgis Improvement Center Project" for the establishment of a "Sturgis Center Parking System" which stated that "a copy of the area to be included in the Sturgis Improvement Center Project is available for public inspection in the city office." This notice was mailed to the owners of the property in the special assessment district, including plaintiffs herein. On May 28, 1963, and June 3, 1963, two notices were published in the

Sturgis Daily Journal, both entitled "Notice of Objection Meeting." Reference was therein made to the "Sturgis Improvement Center Project" and "Sturgis Center Parking System." The notice stated the estimated cost to be $285,000, that a copy of the plat and diagrams of the work and area to be improved was available for public inspection in the city office. The area was further described by metes and bounds.

At the city commission meeting of June 12, 1963, objections were heard to the proposed "Sturgis Center Improvement Project" to be known as the "Sturgis Center Parking System." An attorney representing a group of objectors, including the Waits, filed two petitions on their behalf.

Thereafter, the commission, with one commissioner abstaining, adopted a resolution ratifying and confirming the resolution of May 22d. The resolution directed the assessor to prepare a special assessment roll and assess the land in the district according to benefits. The resolution described the district as it was described in the resolution of May 22d, and directed that the special assessments were to be divided into 10 annual installments.

However, at a meeting on July 10, 1963, the city commission resolved to meet on July 24, 1963, to hear further objections to the "Sturgis Improvement Center Project" and directed that notice thereof be published in the Sturgis Daily Journal once a week for 2 consecutive weeks. This resolution was unanimously adopted.

Two notices, one entitled "Notice of Special Assessment" and one entitled "Notice of Objection Meeting" were published in the Sturgis Daily Journal on July 15th and 22d. The notices, as published, contained the names of the owners of land within the assessment district, except the owners of land

to be acquired; described the "Sturgis Center Improvement Project"; stated the assessment roll was on file in the office of the city clerk for inspection; that hearing would be held on July 24th; and the estimated cost of the project. Notices were mailed to all property owners listed on the special assessment roll.

At the July 24th meeting, 2 petitions were received objecting to the proposed project. The mayor stated that he had been served with process in an action brought against the city by the Waits. Minutes of the meeting disclose that the mayor announced the hearing on objections to the special assessments would not be heard at that time, but objections to the proposed project would be heard. Objections were then heard, including those of the Waits.

The commission by resolution, with one member abstaining, ratified and confirmed the action taken on June 12th. The commission resolved it would again meet on August 14th to review and hear objections to the special assessment for the proposed project. Again, notices of special assessment were published on July 30, 1963, and August 6, 1963, and an abbreviated form thereof was mailed to the owners of property listed on the assessment roll.

At the meeting of August 14, 1963, the commission, after hearing objections to the special assessment by the Waits and others, confirmed the assessment roll with one member abstaining. The city clerk was directed to indorse the assessment roll, and the mayor to attach his warrant. The commission authorized the employment of counsel for the project and ratified all action taken concerning the project. In late August the commission directed the issuance of bonds in the sum of $255,000 to finance the project.

The city assessor computed the assessments upon all privately-owned property within the assessment district, except for 2 parcels occupied as private dwellings, and land which was to be acquired for additional parking.

The Sturgis chapter of the Veterans of Foreign Wars occupies, as tenant, real estate located within the assessment district, owned by plaintiff, Sturgis Foreign Veterans Club of Sturgis, Michigan, a nonprofit corporation. The real estate is exempt from general taxation and appeared on the tax roll *sub nom* Sturgis Veterans of Foreign Wars. Notices of the proposed improvement were mailed to Veterans of Foreign Wars, and this name appears in the published notices. The commander of the VFW post, who was also president of the corporate owner of the property, signed the petition protesting the improvement. It is evident from the testimony that because the property was exempt from general taxation the commander of the VFW post ignored the notices and was unaware the property was to be assessed for the proposed improvement until so informed by an officer of the post.

From a dismissal of the cause of action, plaintiffs appeal.

The appellants allege that compliance with provisions of sections 1–10 of chapter 19 of the charter for the city of Sturgis relative to special assessments is mandatory and jurisdictional; that the city's failure to comply with the provisions void the proceedings.

The appellants do not say that they did not receive notice, nor that they did not have knowledge of the proceedings. They did have notice and appeared in person and by attorneys at the objections hearings. In fact, this suit was instituted prior to the last objection hearing. They claim the proceedings are void because the city did not state in the

printed notice of objections that the estimate of cost was on file at the city clerk's office for inspection, although the printed notice did contain the estimate of cost and was, in fact, on file in the city clerk's office.

PA 1962, No 162, § 5 (CL 1948, § 211.745 [Stat Ann § 5.3534(5)]) states in part:

"Any such special assessment hearing is also validated as to any owner or party in interest *who has actually received* notice of hearing, has waived such notice, or has paid any part of the special assessment." (Emphasis supplied.)

The appellants in the present case did have actual notice, and there was substantial compliance with the mandates of the city charter.

Next, the appellants complain that the city assessor failed to assess city-owned property and privately-owned property, the title to which the city expected to acquire in the future for public parking, and the city commission failed to apportion the publicly-owned property situated within the special assessment district, according to the charter.

The city charter does not require the assessor to assess city-owned property. Section 8 of chapter 19 of said charter states:

"If there shall be included in any special assessment district, lots belonging to the city, school buildings, or other public buildings or public grounds not taxable, such part of the expense of such improvement as in the opinion of the commission or city assessor making the special assessment, would be justly apportionable to such public grounds, buildings and city property, and to any interior squares or places formed by intersection of streets, were they taxable, shall be paid from the general fund, or from the proper street district fund, or partly from each, as the commission shall determine to be just."

However, the city assessor did make an estimated assessment on the city-owned property which was considered by the city commission in determining if the city was assuming its fair share of the special assessment by contributing $59,000, and in effect did apportion its share of the special assessment.

Plaintiffs assert the city commission did not act in good faith and abused its discretion in defining the perimeter of the special assessment district. The trial court stated:

" 'Invariably when a special assessment district is created,   *   *   *   opinions may differ as to its proper extent and its inclusion, or noninclusion, of specific property therein. The creating of the district was within the legislative powers of the commission, and the presumption of validity attaches to the action taken.' *Crampton* v. *City of Royal Oak* (1961), 362 Mich 502, p 514.

"The Court there found that the objectors had failed to show an abuse of discretion by the city of Royal Oak in creating the district and the court finds none by the Sturgis city commission."

An appellate court gives great weight to the findings of the trial court and does not ordinarily disturb the findings of the trial judge unless, after an examination of the entire record, we reach the conclusion that we would have arrived at a different result had we been in the position of the trial judge. *Christine Building Company* v. *City of Troy* (1962), 367 Mich 508.

After a review of the entire record we agree with the conclusions of the trial judge.

Lastly, appellants assert the trial court erred by excluding from evidence interrogatories and answers.

The interrogatories and answers offered in evidence were interrogatories of the city clerk. The witness was in court and did testify. These inter-

rogatories and answers were not used for cross-examination. When counsel was asked by the court the purpose of admission, counsel replied, "The purpose of showing what they show." The trial court properly excluded said interrogatories and answers from evidence.

The Court has considered the other issues raised by the appellants, but does not consider that they are pertinent to the decision of this case.

Judgment of the lower court is affirmed. No costs, a public question being involved.

HOLBROOK, P. J., and J. H. GILLIS, J., concurred.