WHITEHALL LEATHER COMPANY *v.* CAPEK.

1. ADVERSE POSSESSION—CHARACTER OF PREMISES.
   Determination of what acts or uses are sufficient to constitute adverse possession depends upon facts in each case and to a large extent upon the character of the premises.

2. SAME—PERMISSIVE USER.
   Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained, since hostility is of the very essence of adverse possession.

3. SAME—PERIOD PRESCRIBED BY STATUTE.
   Adverse possession must have been for the whole period prescribed by the statute, actual, open, visible, notorious, continuous, and hostile (CL 1948, § 609.1; CLS 1961, § 600.5801).

4. EASEMENTS—USE OF UNINCLOSED LAND NOT IN ITSELF HOSTILE TO OWNER.
   The use of a way of passage of uninclosed vacant land not in use by the owner is not in itself hostile to the owner.

5. ADVERSE POSSESSION—UNINCLOSED VACANT LAND.
   All the essential elements of adverse possession of uninclosed vacant land for the whole statutory period must be so clearly shown as to make it plain to the owner that his rights are being invaded in a hostile manner in order to obtain title by prescription.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur 2d, Adverse Possession §§ 6, 12, 14.
[2] 3 Am Jur 2d, Adverse Possession §§ 32, 36.
[3] 3 Am Jur 2d, Adverse Possession §§ 9, 11.
[4] 3 Am Jur 2d, Adverse Possession § 34.
[5] 3 Am Jur 2d, Adverse Possession §§ 32, 34, 248.
[6] 3 Am Jur 2d, Adverse Possession §§ 32, 34, 104, 253.

6. Same—Hostility—Admission as to Title.

> Holding of trial court that no prescriptive easement was shown in suit by plaintiff tanning company to establish such easement where spur railroad line crosses lots of defendants to connect plaintiff's factory to main railroad *held,* proper, as record discloses no evidence of hostility in possession, rent was paid to the owners of part of the lots over a period of many years, and plaintiff negotiated with the owners of the other lots for such payments and, in effect, admitted title in record title owner.

Appeal from Muskegon; Beers (Henry L.), J. Submitted Division 3 March 8, 1966, at Grand Rapids. (Docket No. 949.) Decided July 26, 1966.

Complaint by Whitehall Leather Company, a division of Genesco, a Tennessee corporation, against Richard J. Capek and Patricia A. Capek to establish a prescriptive easement. Complaint dismissed. Plaintiff appeals. Affirmed.

*Hathaway, Latimer, Clink & Robb* (*H. Winston Hathaway* and *Fred C. Culver, Jr.,* of counsel), for plaintiff.

*A. Winton Dahlstrom,* for defendants.

Burns, J. Appellant filed its complaint to establish a prescriptive easement. The trial court denied the request and dismissed the complaint.

The appellant owns and operates a tannery in the city of Whitehall that has been in operation since before the turn of the century. North of, and adjacent to, appellant's tannery is the appellees' vacant property through which runs a spur railroad track connecting the tannery with a main line of the Chesapeake & Ohio railroad.

The appellees purchased the property, lots 10–14, from Arthur J. Daane, and lots 15–19 from Franklin A. Speese, in November, 1964.

The spur track was in existence prior to 1895, and the appellant and its predecessors in title and business have made extensive daily use of the spur track from 1915 to 1951, with a decline in use since 1951.

The record indicates lease agreements between the tannery and the owners of lots 15–19 as far back as 1895. The payments ranged from $50 to $100 per annum.

With regard to lots 10–14, we find nothing in the record to indicate any lease agreement between the tanning company, its predecessors in title, and the preceding title holders of the present owner (appellees). However, exhibits do show negotiations in 1957 between the tanning company and Arthur J. Daane, appellees' predecessor in title, to lots 10–14, for a lease-purchase agreement. One letter from the appellant corporation to Mr. Daane's attorney contains the following:

"I am again authorized to propose a lease-option agreement whereby Mr. Daane will receive $360 per year and General Shoe to have the option of purchasing the property upon his death for $3,000, applying the rental upon such purchase price. The company to agree to pay the real estate taxes as assessed."

The parties could not come to an agreement as to price; no rent was ever paid, and finally in 1964 Mr. Daane sold the lots to the appellees who also attempted to procure a lease agreement with the appellant, and finally served notice on the appellant.

Our Supreme Court in *Burns* v. *Foster* (1957), 348 Mich 8, 14, stated:

"Determination of what acts or uses are sufficient to constitute adverse possession depends upon the facts in each case and to a large extent upon the character of the premises. *Barley* v. *Fisher* (1934), 267 Mich 450."

And, in *King* v. *Battle Creek Box Co.* (1926), 235 Mich 24, 35, the Court stated:

"Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained. Hostility is of the very essence of adverse possession. 1 RCL pp 701-705.

" 'All of the authorities agree that the adverse possession must have been for the whole period prescribed by the statute,* actual, open, visible, notorious, continuous, and hostile.' *Bean* v. *Bean* (1910), 163 Mich 379, 396.

"The use for a way of passage of uninclosed vacant land not in use by the owner, or even mere possession of it, is not in itself hostile to the owner. * * * To obtain title by prescription all the essential elements of adverse possession for the whole statutory period must be so clearly shown as to make plain to the owner that his rights are being invaded in a hostile manner. *Menter* v. *First Baptist Church* (1909), 159 Mich 21."

In the present case we find no evidence of hostility with regard to either of the appellees' predecessors in title. In fact, the attitude of the plaintiff-appellant (and its predecessors in title and business) is highly inconsistent with hostility. The payment of rent over a period of many years is hardly adverse and hostile. With regard to the former Daane property, though no rent was ever paid, the negoti-

---

* See CL 1948, § 609.1 (Stat Ann § 27.593), and CLS 1961, § 600.5801 (Stat Ann 1962 Rev § 27A.5801).—REPORTER.

ations in 1957 would certainly seem to be an admission of title in Mr. Daane.

Judgment of the trial court is affirmed. Costs to the appellees.

FITZGERALD, P. J., and J. H. GILLIS, J., concurred.