**The HERITAGE SOCIETY OF WASHINGTON COUNTY, Appellant,**

v.

**Fritz J. NEUMANN, et al., Appellees.**

**No. C14–87–00135–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 30, 1989.

Rehearing Denied May 25, 1989.

Dissenting Opinion May 25, 1989.

**564**

David F. Webb, Houston, for appellant.

L. John Lacina, Jr. and Paul A. Ehlert, Brenham, for appellees.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

The Heritage Society of Washington County appeals from the trial court's reversal of an order by the Board of Adjustment in Brenham, Texas. In two points of error appellant claims (1) the trial court erred in refusing to vacate its judgment because the Board of Adjustment had no jurisdiction to decide the applicability of the special use permit; and (2) the trial court failed to apply the proper standard of review in reviewing the Board of Adjustment's action. We affirm.

On November 15, 1977, the City Commission of the City of Brenham granted a special use permit to appellants, the Heritage Society of Washington County. The special use permit was granted as a nonconforming use in an area zoned for single family residential housing. The purpose of the permit was the restoration and reconstruction of the Giddings–Stone Mansion Buildings. The permit gives the Heritage Society an option to reconstruct a carriage house on the grounds of the mansion, but includes a proviso stating that the exterior dimensions and design of the carriage house shall conform as closely as possible to those of the original carriage house.

On July 31, 1986 Brenham's Building Official/Building Inspector issued Building Permit No. 003792 authorizing construction of the carriage house. Appellees, Fritz Neumann and other property owners, appealed the issuance of the building permit to Brenham's Board of Adjustment. The property owners alleged that the building permit was not validly issued because there was no proof that an original carriage house existed; therefore, a reconstruction would be impossible. They further alleged that the proposed carriage house was actually a new building and, as such, did not comply with the special use permit. The board affirmed the issuance of the building permit.

Mr. Neumann and the other property owners then filed a petition for writ of certiorari to the district court. The district court granted the writ of certiorari and determined that the decision of the Board

of Adjustment in affirming the issuance of the building permit was illegal, and that the City of Brenham, through its Building Official/Building Inspector, erred as a matter of law in issuing the building permit.

In its first point of error the Heritage Society contends the Board of Adjustment lacked jurisdiction to review the issuance of the building permit, and, in turn, the trial court lacked jurisdiction to review the action taken by the Board of Adjustment. The Heritage Society bases their argument on the following provision in the Brenham Code:

> The board of adjustment shall not have jurisdiction to hear, review, reverse, or modify any decision, determination, or ruling with respect to the granting, extension, revocation, modification or any other action taken relating to such special use permit.

Brenham Code § 15.02(5).

The Heritage Society claims the Board of Adjustment's action in affirming the issuance of the building permit was an "action taken relating to such special use permit," and therefore, was not an action within the board's authority. The Board of Adjustment's action cannot be characterized as such. The action taken by the board was the result of an appeal of the City Building Official/Building Inspector's issuance of the building permit. The Brenham Code provides for such an appeal:

> Appeals based on error: The board [of adjustment] shall have the power to hear and decide appeals where it is alleged there is error of law in any order, requirement, decision or determination made by the building inspector in the enforcement of this ordinance.

Brenham Code § 19.03(2).

The State Local Government Code also provides for such an appeal. The appellate jurisdiction of a Board of Adjustment is governed by § 211.009(a)(1) of the Texas Local Government Code Annotated (Vernon 1988) (codification of art. 1011g TEX.REV. CIV.STAT.ANN.) which empowers the board "to hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement of this subchapter or an ordinance adopted under this subchapter."

The building inspector of Brenham issued the building permit for the construction of the carriage house. The issuance of the building permit is an action taken relating to the special use permit. The property owners then appealed the building inspector's issuance of the building permit to the Board of Adjustment. The Board of Adjustment affirmed the Building Official/Building Inspector's issuance of the building permit. The affirmance of the action taken relating to a special use permit cannot be characterized as a prohibited act under section 15.02(5) of the Brenham Code. The Board of Adjustment did not hear and review an action relating to the special use permit. Rather, the Board of Adjustment heard an appeal where an error was alleged in the issuance of the building permit.

The claim brought by Mr. Neumann and the other property owners to the Board of Adjustment was that the building permit allowed construction of a building that did not conform to the special use permit. The proposed carriage house did not conform to the exterior design and dimensions of an original carriage house as provided by the special use permit. A claim to a nonconforming use under zoning ordinances is uniformly determinable by appeal to a Board of Adjustment from an order of the Building Inspector or similar administrative official and then by certiorari to the district court. *Washington v. City of Dallas*, 159 S.W.2d 579, 580 (Tex.Civ.App.— Dallas 1942, no writ); TEX.LOCAL GOV'T CODE ANN. §§ 211.008 & 211.009 (Vernon 1988). Therefore, the Board of Adjustment and the district court had jurisdiction to review the issuance of the building permit. The Heritage Society's first point of error is overruled.

In its second point of error the Heritage Society claims the trial court failed to apply the proper standard of review to the evidence before the Board of Adjustment. The standard of review by a district court

of a Board of Adjustment's action is an abuse of discretion standard. We conclude that the trial court properly applied that standard to the evidence before the Board of Adjustment.

A Board of Adjustment is a quasi-judicial body and the district court sits only as a court of review by writ of certiorari. TEX. LOCAL GOV'T CODE ANN. § 211.009 (Vernon 1988). At the district court level the complaining party carries the burden of proof to show the decision of the Board of Adjustment is illegal, and to establish illegality, the complaining party must show that the Board of Adjustment abused its discretion. *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 190 S.W.2d 67, 70 (1945); *Currey v. Kimple,* 577 S.W.2d 508, 512 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.).

■ On appeal we are also limited to an abuse of discretion standard of review. We must review the legality of the board's action in affirming the issuance of the building permit. If the evidence before this Court is such that reasonable minds could have reached the same conclusion as made by the Board of Adjustment, we must sustain the board's action. *See Texans To Save The Capitol v. Board of Adjustment,* 647 S.W.2d 773, 777 (Tex.App.— Austin 1983, writ ref'd n.r.e.). We conclude that the property owners have shown that the Board of Adjustment abused its discretion in affirming the issuance of the building permit.

■ The issue before the Board of Adjustment and the district court was whether the proposed carriage house would be a reconstruction of the original carriage house as allowed by the special use permit. The evidence before the Board of Adjustment shows that the proposed carriage house is not a reconstruction of an original carriage house because there is no physical or pictorial evidence that an original carriage house ever existed at the mansion. The Building Official/Building Inspector who issued the permit testified that he was not provided any information with regard to an original carriage house that existed at the mansion. He further stated that, at

the time the permit was issued, he made no determination whether the exterior dimensions and design of the building were that of the original carriage house.

The Heritage Society introduced evidence that a number of houses of the same character as the Giddings–Stone Mansion in the county and throughout the United States had carriage houses, and many of those houses were not as grand as the Giddings– Stone Mansion; therefore, a house as grand as the Giddings–Stone Mansion would likely have had a carriage house. Additionally the Heritage Society introduced into evidence a letter from an architect which stated that houses with the same character as the Giddings–Stone Mansion most likely had carriage houses.

We conclude that reasonable minds could not have reached the same conclusion as made by the Board of Adjustment. The record presents no evidence of an original carriage house. Therefore, the Board of Adjustment abused its discretion in affirming the issuance of Building Permit No. 003792. Hence the trial court did not err when it reversed the board's action. The Heritage Society's second point of error is overruled.

The judgment of the trial court is affirmed.

SEARS, J., dissents and files an opinion.

SEARS, Justice, dissenting.

I respectfully dissent.

The majority of this panel is convinced that so long as there is no proof that a carriage house existed in the original Giddings–Stone Mansion building, it was somehow illegal for the city to issue a special use permit for the construction of a carriage house. However, whether there was an original carriage house is not an issue in this appeal.

The only way the majority opinion can affirm the trial court's reversal of the Board of Adjustments is to find that the Board can review and revoke the issuance of a special use permit. This is precisely

what the city fathers sought to prevent by the enactment of Brenham Code § 15.02(5), which provides:

The Board of Adjustment shall not have jurisdiction to hear, review, reverse, or modify *any* decision, determination, or ruling *with respect* to the granting, extension, ramification, modification or any other action taken relative to such *special use* permit. (Emphasis added).

The City of Brenham could not have been more precise or unambiguous in removing from the Board of Adjustments any power with respect to the "granting, extension, revocation, modification or any other action taken relating to such special use permit." This court does not have the power to circumvent the clear language, intent and purpose of this code.

The Supreme Court of Texas has clearly established the principles for construing a statute, and these principles should apply equally to an ordinance or code. "Unless a statute is ambiguous, we must follow the clear language of the statute." *Republicbank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985). As far back as 1920, the supreme court held:

Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intentment of a statute, giving full effect to all of its terms. But they must find its intent and its language and not elsewhere ... They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66 (1920). In cases too numerous to list, the Supreme Court and the Courts of Appeals of Texas have consistently followed this principle of interpretation.

In the *Interkal* case, the appeal revolved around the construction of Tex.Rev.Civ. Stat.Ann. art. 5472e, (Vernon 1958) (now codified in part at Tex.Prop.Code Ann. § 162.004 (Vernon 1984)), the relevant portion of which stated:

Section 4  This action shall have no application to *any* bank, savings and loan associations or other lender or to any title company or other closing agent in connection to *any transaction* to which this act is applicable. (Emphasis added).

That article is remarkably similar to Brenham Code § 15.02(5). The code deals with *any action* taken relative to *any* special use permit and Article 5472e deals with *any transaction* involving *any* bank, etc. *Interkal* argued that this section of the act means only that a bank cannot be subject to liability for using trust funds over which a bank already had some form of control. However, the supreme court held that: "Language supporting such a qualification or limitation upon Section 4 of the act cannot be found in the statute." *Interkal,* 691 S.W.2d at 607. Likewise, the revoking of the special use permit by the majority cannot be supported by any language of the Brenham Code. The majority opinion, in an attempt to justify its avoidance of the building code, says that this was not an action taken relative to a special use permit, but was instead the result of an appeal of a city building inspectors *issuance* of the building permit. The majority contends that this is proper because the Brenham Code provides for such an appeal in Brenham Code § 19.03(2) which states as follows:

Appeals based on error: the Board [of Adjustment] shall have the power to hear and decide appeals where it is alleged there is *error of law* in any order, requirement, decision or determination made by the building inspector in the enforcement of this ordinance. (Emphasis added).

However, the majority fails to show how the *issuance* of the special use permit was an error of law. Unless it is shown to be an error of law, the entire reasoning of the majority opinion fails. In fact, appellee's trial pleadings do not allege an error of law but point out that appellants have totally failed to prove the *existence* of an original

carriage house, and they pray that "this court enter its order declaring the special use permit as it pertains to the reconstruction of the original carriage house null and void and of no force in effect and *rescind* the herein above described building permit." Yet, pursuant to Code § 15.02(5), the board has no power to revoke (rescind) any special use permit.

The majority opinion also cites Brenham Code § 19.03(2) as authoritative for the board to "hear and decide an appeal that alleges error in any order, requirement, decision, or determination made by an administrative official ...". However, the majority ignores the right of the local government to limit any appeal which may be heard by their Board of Adjustment. This is precisely what the city of Brenham did in enacting Brenham Code § 15.02(5). The majority further cites a case involving the city of Dallas for the right of the Board of Adjustments to hear an appeal claiming nonconforming use under zoning ordinances. However, there is no showing that the city of Dallas had a provision in their code similar to Brenham Code § 15.02(5). Therefore, any analogy or comparison by any other city is of no probative effect unless that city also removed from their Board of Adjustments any power to review or revoke any action relating to any special use permit.

In dealing with the second point of error, the majority opinion merely holds that they are limited to an abuse of discretion standard on review and that they must review the legality of the board's action in affirming the issuance of the building permit. However, there is no discussion by the majority opinion, nor indeed is there any evidence offered to show the *illegality* of the board's action. In fact, the proper legal standard for review is to presume that such decisions are legal, and that any party complaining of such action must establish illegality by a "very clear showing of abuse of discretion." *Currey v. Kimple*, 577 S.W.2d 508, 512 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.).

In finding an abuse of discretion, the majority opinion discusses only the fact that there was no proof of the existence of an original carriage house. However, there is no showing of a requirement that there be a previously existing carriage house in order to construct a carriage house on this property. It is clear that the Board of Adjustments heard and believed the testimony of expert witnesses to the effect that all mansions of that stature and in that era had carriage houses, as well as the uncontroverted opinion testimony that *this mansion had a carriage house.* Based on this evidence, the Board upheld the issuance of the special case permit. Clearly, this falls far short of any abuse of discretion standard that has ever been applied by this court. Simply put, the majority feels that without *absolute* proof of a pre-existing carriage house, there can be no special use permit. I believe reasonable minds could have reached the same conclusion as the Board. However, that is not the issue before us. The issue is simply: 1) does the Board of Adjustments have the power to review the issuance of a special use permit, and if so, 2) does the district court have the power to reverse the decision of the Board in the absence of a clear showing of abuse of discretion by the Board of Adjustments?

I would uphold the clear language of the Brenham Building Code § 15.02(5) and hold that the Board of Adjustments does not have authority to review the issuance of any special use permit. Further, I would find that the Board of Adjustments did not abuse their discretion, that there was no error of law committed by the building inspector issuing the permit, and that the district court erred in reversing the decision of the Board of Adjustments.

I would reverse the judgment of the trial court and render judgment for appellant.