Louis P. PEKTOR, III, Appellant,

v.

ZONING HEARING BOARD OF WILLIAMS TOWNSHIP, Northampton County, Pennsylvania and Columbia Gas Transmission Corporation and Township of Williams.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.

Decided Feb. 8, 1996.

---

Erv D. McLain, for Appellant.

Robert Eyer, for Appellee.

Before COLINS, President Judge, SMITH, J., and KELTON, Senior Judge.

KELTON, Senior Judge.

Louis P. Pektor, III (Pektor) appeals from the February 13, 1995 order of the Honorable James C. Hogan of the Court of Common Pleas of Northampton County affirming the March 8, 1994 decision of the Zoning Hearing Board (Board) of Williams Township to grant two variances to Columbia Gas Transmission Corporation (Columbia) relating to its proposed erection of a compressor station and natural gas facilities. We affirm the Board's grant of the variance relating to the public water and public sewer requirement, but reverse its grant of the variance relating to the pavement requirement.

## Background

The Federal Energy Regulatory Commission gave Columbia approval to construct a compressor station and natural gas facilities in connection with the construction and operation of a new natural gas transportation service to the northeastern United States. (Board's Findings of Fact Nos. 6 and 7; R.R.

A–19.) As this project would necessitate buildings and other improvements, Columbia sought relief from the Board in the form of variances from Williams Township Zoning Ordinance (Ordinance) section 1107(I), requiring that the proposed use be served by public water and public sewer, and section 1603(E)(1), requiring that access and parking areas be paved.

In granting Columbia's requested relief from section 1107(I) of the Ordinance, the Board found that the need for water and sewage at the site would be limited to serving the comfort needs of two employees required to be at the site for purposes of monitoring the facility. Significantly, it also found that the nearest public water and sewer lines are located approximately five miles from the proposed site, that all of the surrounding properties are serviced by private sewer and water systems, that the proposed station would not use water in the industrial process and that the Williams Township Sewage Enforcement Officer had already approved the proposed private sewage system for the site. (Board's Findings of Facts Nos. 8–13; R.R. A–19–20.)

Accordingly, with regard to the public water and sewer requirement, the Board concluded that the five-mile distance to the nearest public water and sewer supply was a condition peculiar to the property which would cause unnecessary hardship if the water and sewage regulations were strictly applied and Columbia was forced to secure water and sewer for such an insignificant use. Further, it concluded that requiring Columbia to connect the site to public water and sewer for two employees would be simply unconscionable in light of the fact that

the use would be less than for a single-family dwelling. (Board's Conclusions Nos. 3 and 5; R.R. A–21–22.)

With regard to section 1603(E)(1) of the Ordinance, which requires that access and parking areas be paved, the Board found that no vehicular equipment or traffic would use the driveway on a regular basis and that any use would be less than that connected with a single-family residence. (Board's Finding of Fact No. 20; R.R. A–20.) Further, it found that a gravel driveway would be more conducive to the rural nature of the area, would deter curiosity seekers and trespassers and would serve to facilitate repairs and maintenance to underlying support infrastructures. (Board's Findings of Fact Nos. 21 and 22; R.R. A–20–21.) Thus, it concluded that Columbia's proposal to use gravel instead of pavement for its parking and access areas was necessary to ensure and enable reasonable use of the property. (Board's Conclusion No. 4; R.R. A–22.)

Having found that Columbia met the Ordinance's requirements for the two variances at issue, the Board granted Columbia's requests with two conditions.[1] Without taking any evidence, the trial court set forth a fine analysis and affirmed the Board's order.

## Issue [2]

◼ The issue before us for review is whether the Board erred in granting Columbia's requests for the two variances because the Ordinance imposes unnecessary hardship due to unique conditions peculiar to the property and there is no possibility that the property could be developed in accordance with the Ordinance.[3] Where, as here, the trial

---

1. The conditions are that Columbia must obtain a zoning permit and building permit from the Township Zoning Officer prior to construction and occupancy of the premises and that it must obtain relief from any governmental body related to the land development/subdivision of the premises, including but not limited to the Township Planning Commission and the Board of Supervisors. (Board's Conclusions Nos. 10(a) and (b); R.R. A–23–24.)

2. At this time, we need not address the issue of whether the Township's Ordinance is pre-empted by federal legislation and any regulations governing the proposed use. Columbia submitted to

state jurisdiction by applying for the two variances and placing itself in the zoning process. *See* Trial Court's Opinion at 4, n. 1; R.R. A–4 and Board's Conclusions Nos. 1–2; R.R. A–21.

3. In his brief, Pektor limited himself to arguing that the Board erred in granting the variances on the basis of these first two criteria for a variance. (Pektor's Brief at 30.) Thus, we need not discuss the other criteria necessary for a variance. *See* Section 910.2 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10910.2.

In general, we note that variances are generally granted only under exceptional circumstances

court took no additional evidence, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Greene Townes Financial Corp. v. Zoning Hearing Board of Lower Merion Township*, 157 Pa. Cmwlth. 454, 630 A.2d 492 (1993).

## Discussion

### 1. Public Water and Public Sewer Requirement

 "To prove an unnecessary hardship warranting the grant of a variance, the applicant must demonstrate that physical characteristics of the property make use of the property for a permitted purpose impossible or possible only at a prohibitive expense." *Greene*, 630 A.2d at 494. Mere economic loss cannot constitute unnecessary hardship. *Id.*

██ Here, Pektor argues that the Board erred in granting the variance relating to the public water and sewer requirement because Mr. Joseph V. Civitella, Jr., the project engineer responsible for the compressor station, testified that it probably would not be a physical impossibility for Columbia to construct and dedicate a packaged treatment plant on the property and that, although it would cost hundreds of thousands of dollars to bring a sewer and water line the required five miles from the existing location, it would not be impossible to link up the site to that line. (N.T. 21–22; R.R. A–46–47.) Further, Pektor contends that it was an abuse to find economic hardship with regard to the public sewer and water requirement because there apparently were alternatives available and the mere fact that the cost of laying down five miles of line for two employees to use the toilet and wash up would be disproportionately high is irrelevant when considered in a variance context.

Columbia argues that the location of the proposed site as compared to the location of public water and sewer is, in and of itself, a unique physical circumstance peculiar to the property which would inhibit reasonable use of the property if the requirement was strictly applied. Further, it contends that, in light of the highly limited proposed water and sewage use, requiring it to expend money to connect the site to public services would be unreasonable, punitive and confiscatory.

In *Griffith v. Exeter Township Zoning Hearing Board*, 109 Pa.Cmwlth. 382, 531 A.2d 121, 123 (1987), *petition for allowance of appeal granted*, 519 Pa. 656, 546 A.2d 60 (1988), the zoning ordinance required that all properties over 5,000 square feet in an R–6 district be served by public water and sewer. We considered the issue of whether the landowners proved unnecessary hardship by virtue of the fact that the approximate cost of providing water service to their property, $24,000.00, exceeded the cost of the mobile home that they placed on the property, $20,-000.00. We concluded that the landowners failed to satisfy the unnecessary hardship criterion because the hardship was solely economic and, without more, insufficient to support the grant of a variance. Although the case before us for disposition is a close one, we find *Griffith* to be distinguishable.

Here, the Board considered and accepted evidence that the available public water and sewer was located approximately five miles from the site. (Board's Finding of Fact No. 8; R.R. A–19.) Thus, more than mere cost was at issue. Additionally, in affirming the Board, the trial court noted:

the testimony of Mr. Civitella presented substantial evidence for the ZHB to conclude reasonably that the remoteness of the property from the services required by the ordinance presents unique circumstances or characteristics and justifies the variance. The location of the property makes the construction of public water and sewer lines impractical and prohibitively expensive for the proposed use. There is no substantial water and sewage use contemplated which would justify a five (5) mile extension of services. It appears a

---

and that an applicant must satisfy all criteria necessary for the grant of a variance. *Gateside-Queensgate Co. v. Delaware Petroleum Co.*, 134 Pa.Cmwlth. 603, 580 A.2d 443 (1990). The reasons for granting a variance must be substantial, serious and compelling. *Valley View Civic Asso-ciation v. Zoning Hearing Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). The burden upon a landowner who seeks a variance is a heavy one. *Polonsky v. Zoning Board of Mount Lebanon*, 139 Pa.Cmwlth. 579, 590 A.2d 1388 (1991).

single bath facility will serve the entire multi-acre tract.

(Trial Court's February 13, 1995 Opinion at 11–12; R.R. A–11–12.) We find the trial court's reasoning to be persuasive[4] and decline to substitute our judgment for that of the Board. *Krum v. Montour County Zoning Hearing Board,* 70 Pa.Cmwlth. 76, 452 A.2d 306 (1982); *Haverford Township v. Zoning Hearing Board of Haverford Township,* 21 Pa.Cmwlth. 207, 344 A.2d 758 (1975).

### 2. Pavement Requirement

■ Pektor argues that the Board erred in granting the variance relating to the pavement requirement because Mr. Civitella admitted that it was not a unique situation to have to replace pavement after sewage lines were laid or to repair potholes which occur in a paved area. (N.T. 24–25; R.R. A–49–50.) Also, the second Columbia witness, Mr. Richard K. Cole, admitted that there were no unique physical characteristics on the property which would prevent pavement from being placed on the driveway or parking area and that he was aware of no physical reason why the driveway and parking areas could not be paved. (N.T. at 37; R.R. A–62.)

In its brief, Columbia points out that, at least in part, it proposed the use of a gravel driveway for access to the site due to the request of an adjoining property owner. (Columbia's Brief at 18–19.) It reiterates the Board's findings that no special vehicular equipment or heavy traffic flow would need access to the proposed facility, that the use of gravel would lessen the likelihood of trespass and that gravel would be more conducive to the rural character of the area.

After examining the record, we must conclude that the Board erred in granting the variance relating to the pavement requirement. The Board's reasons for granting the pavement variance were simply not substan-

tial, serious or compelling[5] and there were no exceptional circumstances present here warranting the grant of the pavement variance.[6]

### Conclusion

Accordingly, we affirm that part of the trial court's order affirming the Board's grant of the variance relating to the public water and public sewer requirement, but reverse that part of the trial court's order affirming the Board's grant of the variance relating to the pavement requirement.

### ORDER

AND NOW, this 8th day of February, 1996, that part of the February 13, 1995 order of the Court of Common Pleas of Northampton County affirming the Board's grant of the variance relating to the public water and public sewer requirement is hereby affirmed, but we reverse that part of the trial court's order affirming the Board's grant of the variance relating to the pavement requirement.

---

**4.** *See Higgins v. Township of Radnor,* 13 Pa. Cmwlth. 195, 318 A.2d 761 (1974) (board did not abuse its discretion in finding that unnecessary hardship criterion was satisfied due to prohibitive expense where it accepted evidence that, even though development of a tract for five residences would be feasible from an engineering standpoint, there was a necessity for bridges costing $16,000.00 apiece over Ithan Creek and

the residences would be located under the 25 foot embankment of the proposed Blue Route Expressway, now constructed).

**5.** *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

**6.** *Gateside–Queensgate Co. v. Delaware Petroleum Co.,* 134 Pa.Cmwlth. 603, 580 A.2d 443 (1990).